UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RBG PLASTICS, LLC, d/b/a RESTAURANTWARE, <br><br> Plaintiff, <br><br> v. <br><br> SPARKLES GIFT & PARTY SHOP, INC. and STOCK YOUR HOME, LLC, <br><br> Defendants. | No. 1:24-cv-02155 <br><br> Judge Franklin U. Valderrama |

ORDER

This is trademark infringement dispute arises from the use of "RESTAURANTWARE." Plaintiff RBG Plastic, LLC, d/b/a, Restaurantware (Plaintiff), sued Defendants Sparkles Gift & Party Supply, Inc. (Sparkles) and Stock Your Home, LLC (SYH) (collectively, Defendants), asserting several causes of action stemming from Defendants' alleged use of registered trademarks and deceptive practices relating to the use of RESTAURANTWARE. R. 21,[1] First Amended Complaint (FAC). Defendants move to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). R. 27, Mot. Dismiss. For the reasons stated below, the Court grants Defendants' motion as to Counts I–VII.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

## Background

Plaintiff has supplied the food service industry with products and online retail services under the name RESTAURANTWARE since 2010. FAC ¶ 18. Plaintiff operates an online retail store known as "Restaurantware.com" and markets its goods and services using that name. *Id.*; R. 37, Resp. at 2. Over the years, Plaintiff has obtained five registrations with the U.S. Patent and Trademark Office (USPTO) for RESTAURANTWARE (Marks). FAC ¶¶ 11–14, 17. Plaintiff obtained the first three registrations in 2017 and the subsequent registrations in 2023 and 2024. *Id.* The Marks apply to a wide variety of food-related goods, such as compostable tableware, various cooking utensils, and industrial cooking machines; and services such as online retail stores with preparation, serving, and dining supplies for the food service industry. FAC ¶¶ 11–17. RESTAURANTWARE is on the principal register. R. 37-1. Defendants did not oppose Plaintiff's Marks during the publication periods. FAC ¶ 19.

Sparkles does business under the name Stock Your Home. FAC ¶ 7. Sparkles distributes tableware, dinnerware, silverware, and other home goods under its STOCKYOURHOME brand. *Id.* ¶ 23; R. 28, Memo. Dismiss at 1.

Plaintiff sued Defendants, asserting claims for: trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (Count I); unfair competition and false description under the Lanham Act, 15 U.S.C. § 1125(a) (Counts II and III); common law injury for business reputation (Count IV); violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 (Count V); violation the Illinois Trademark Registration & Protection Act (Count VI); and violation of the Illinois Consumer Protection Act (ICFA), 815 ILCS 505/2 (Count VII).

Defendants move to dismiss the First Amended Complaint (FAC) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c). Before delving into the substantive arguments, the Court must untangle a procedural knot occasioned by the Defendants' motion.

**Procedural History**

Plaintiff commenced this case by filing a complaint on March 14, 2024. R. 1. On July 15, 2024, Plaintiff sought leave to file an amended complaint that named SYH as a defendant. R. 20. On July 30, 2024, the Court granted Plaintiff's motion for leave and ordered the FAC act as the operative complaint. R. 24. On August 13, 2024, Sparkles answered the FAC, including affirmative defenses and a counterclaim on August 13, 2024. R. 27, Ans. SYH did not file an answer. On the same day, Defendants filed a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings. Mot. Dismiss.

As a preliminary matter, Plaintiff takes issue with Defendants' motions based on the procedural posture. Specifically, Plaintiff argues that SYH's 12(c) motion is improper because it has not filed an answer, and that Sparkles' 12(b)(6) and 12(c) motions are improper, respectively, because it has filed an answer and Plaintiff has not answered its counterclaims. Resp. at 3. From Plaintiff's perspective, the only motion properly before the Court is SYH's 12(b)(6) motion. *Id.* at 4. Defendants counter in their reply that Plaintiff's argument is much ado about nothing. R. 38, Reply at 14.

3

Starting with SYH, as stated above, Plaintiff does not take issue with SYH moving under Rule 12(b)(6), but argues that SYH cannot move for judgment on the pleadings under Rule 12(c) because SYH has not filed an answer. "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Rule 12(c) permits a party to move for judgment after the complaint and answer have been filed by the parties." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). So, the Court agrees with Plaintiff that SYH's motion under Rule 12(c) is premature, but it matters not, as SYH may move to dismiss under Rule 12(b)(6).

Turning to Sparkles, Plaintiff contends that its Rule 12(b)(6) motion is too late, and its Rule 12(c) motion is too early. Resp. at 3–4. A motion to dismiss under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). So, the Court agrees with Plaintiff that, since Sparkles filed an answer, technically it cannot move to dismiss under Rule 12(b)(6). *See Urrutia v. Buena Vista Rest. & Bar*, 2014 WL 7403463, at *1 (N.D. Ill. Dec. 29, 2014). And, as stated above, a Rule 12(c) motion is proper only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). In the Seventh Circuit, when, "in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply." *Flora v. Home Federal Sav. and Loan Ass'n*, 685 F.2d 209, 211 n.4 (7th Cir. 1982); *Shield Techs. Corp. v. Paradigm Positioning, LLC*, 908 F. Supp. 2d 914, 916 (N.D. Ill 2012). Here, Sparkles's motion for judgment on the pleadings is premature because Plaintiff has not answered or responded to Sparkles's m counterclaim. *Parker v. Parker*, 2023 WL

4

6976900, at *4 (N.D. Ill. Oct. 23, 2023). "When Rule 12(c) motions are filed prematurely, the Court commonly treats the motion as a Rule 12(b)(6) motion." *Arch Ins. Co. v. Stone Mountain Access Sys., Inc.*, 2016 WL 3671466, at *3 (N.D. Ill. July 11, 2016) (collecting cases). Other courts—including the court in *Urruitia*, cited by Plaintiff—deny untimely Rule 12(c) motions on a technical basis, but nonetheless consider the parties' substantive arguments to rule on the sufficiency of the complaint in order to avoid unnecessary delay. *See, e.g.*, *Urrutia*, 2014 WL 7403463, at *1; *Shield Techs.*, 908 F. Supp. 2d at 917. Given the Court is already considering SYH's motion under Rule 12(b)(6), so too will it consider Sparkles' arguments under Rule 12(b)(6).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The

5

allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Discussion

### I.   Lanham Act Claims (Counts I and II)

Counts I and II allege trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125(a) of the Lanham Act. To state a claim under the Lanham Act for both trademark infringement and unfair competition, Plaintiff must sufficiently allege that (1) its trademarks are protectable, and (2) that Defendants' use of the mark is likely to cause confusion among consumers. *SportsFuel, Inc., v. PepsiCo., Inc.,* 932 F.3d 589, 595 (7th Cir. 2019); *see Long Grove Investments, LLC v. Baldi Candy Co.*, 397 F. Supp. 3d 1190, 1197 (N.D. Ill. 2019) ("Section 43(a) claims proceeding under theories of 'false designation of origin' and 'unfair competition' mirror those for a trademark infringement claim"). Courts in the Seventh Circuit analyze the likelihood of confusion under a seven-factor test: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to palm off his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (cleaned up). "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented, although in many cases, the similarity of the marks, the defendant's intent, and actual confusion are particularly important."

6

*KJ Korea Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1015 (N.D. Ill. 2014) (citing *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 643 (7th Cir. 2001)).

Defendants do not challenge the first element, as to whether RESTRAUNTWARE is a protectable mark. *See* Memo. Dismiss. Instead, Defendants argue that the FAC does not allege facts that support the likelihood of confusion element. *Id.* at 4. Specifically, Defendants assert that the FAC does not support the three most important factors. *Id.* Accordingly, the Court, contend Defendants, should dismiss the claims as conclusory, as the court did in *Beacon Hill Staffing Grp., LLC v. Beacon Res., LLC*, 2020 WL 7027651 (N.D. Ill. Nov. 30, 2020). Defendants do not address each factor in their opening motion, rather arguing that the only allegations in the FAC that, from Defendants' perspective, could support a likelihood of confusion, are insufficient. Memo. Dismiss at 4 (citing FAC ¶¶ 24–27). Only in reply do Defendants go factor-by-factor. *See* Reply at 3–8. "While arguments made for the first time in a reply brief are generally treated as waived, it does not necessarily follow that arguments that are better developed in a reply brief are waived." *Hernandez v. Cook Cty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011).

Predictably, Plaintiff disagrees, insisting that it sufficiently pled facts supporting the confusion element. As Plaintiff correctly notes, because the seven-factor test requires fact-intensive analysis, it ordinarily does not lend itself to a motion to dismiss. Resp. at 7 (citing *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015)).

7

The Court addresses each factor in turn.[2]

### A. Similarity Between the Marks

"To determine whether two marks are similar, we view the marks as a whole." *Mon Aimee Chocolat, Inc. v. Tushiya LLC*, 2015 WL 6407758, at *5 (N.D. Ill. Oct. 22, 2015) (citing *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015)). Here, Plaintiff alleges that "Defendants have and are currently using the phrase 'RESTAURANTWARE' and/or 'RESTAURANT-WARE' and/or other related but confusingly similar marks . . . in its online advertising and marketing campaigns." FAC ¶ 20. The FAC also contains a screenshot of an example of the Defendants' prominent use of the mark in online advertising after alleging the registration of Plaintiff's registered RESTAURANTWARE Marks. *Id.* ¶ 21. Both parties' marks are compromised with "restaurant" and "ware." The two uses by the parties are the same in spelling and look as alleged by Plaintiff, therefore, the first factor weighs in favor of Plaintiff.

### B. Similarity of the Products

"In examining the second factor . . . courts ask whether the products are the kind the public attributes to a single source." *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 790 (N.D. Ill. 2015) (citing *KJ Korea*, 66 F. Supp. 3d at 1015). Here, Plaintiff alleges that Defendants are "competitors in the food service and services business" and their products "will be sold in the same types of wholesale, retail and distribution channels to the same classes of purchasers as Plaintiff's

---

[2] Neither Defendants nor Plaintiff addressed the "degree of care" factor, so the Court does not do so.

8

products and services have been, are, and will continue to be sold." FAC ¶¶ 10, 25. The excerpt of a description from SYH's YouTube account indicates that it is in the business of selling "plastic place settings" like the products Plaintiff alleges itself sells. FAC ¶¶ 11, 23. This allegation regarding the similarity of products provide "fair notice of what the claim is and the grounds upon which it rests." *KJ Korea*, 66 F. Supp. 3d at 1015 (citing *Erickson v. Pardus*, 551 U.S. 89, 127 (2007)). At this stage, this is enough, and this factor weighs in favor of Plaintiff.

### C. Area and Manner of Concurrent Use

Under the third factor, courts assess whether there is a relationship in use, promotions, distribution, or sales between the goods or services of the parties. *KJ Korea*, 66 F. Supp. 3d at 1016. Courts may consider the geographical distribution areas, where there is direct competition between the products, and if the products are sold in the same type of store or marketing channels. *Id*. Plaintiff alleges that Defendants' products and services "have been, are and will be sold in the same types of wholesale, retail and distribution channels to the same classes of purchasers as [Plaintiff's] products and services have been, are and will continue to be sold." FAC ¶ 25.

Defendants argue that Plaintiff's allegations are boilerplate and provide no useful information as its allegation of wholesale and retail "covers every business under the sun." Reply at 6. The Court agrees with Plaintiff that the FAC sufficiently alleges area and manner of concurrent use. Resp. at 9. The allegations are similar to those found sufficient in *Facebook, Inc. v. Teachbook.com LLC* and in *Mon Aimee*

9

*Chocolat. Facebook*, 819 F. Supp. 2d 764, 784 (N.D. Ill. 2011) ("The complaint states that [b]oth Facebook and [Teachbook] offer their services through the same channel of trade, i.e., the internet." (cleaned up)); *Mon Aimee Chocolat*, 2015 WL 6407758, at *5 (allegation that "both parties market and sell to consumers across the United States," including via the internet, was sufficient). This favor weighs in favor of Plaintiff, if minimally.

### D. The Strength of Plaintiff's Marks

In evaluating the strength of the mark, courts examine the distinctiveness of the mark, or its tendency to identify the goods sold from a particular source identified by the mark. *KJ Korea*, 66 F. Supp. 3d at 1016. The strength of a mark usually corresponds to its economic and marketing strength. *Autozone, Inc. v. Strick*, 543 F.3d 923, 933 (7th Cir. 2011).

Plaintiff alleges that it has obtained registration for five Marks, which it argues provides *prima facie* evidence of the validity of the Marks. Resp. at 9 (citing FAC ¶¶ 11–17). Plaintiff also alleges that it first used the RESTAURANTWARE mark in 2010 and that it has used the mark exclusively and continuously since, as well as the "good will" associated with RESTAURANTWARE. *Id.* (citing FAC ¶¶ 18, 21). Defendants concede that, "[w]hen the PTO registers a mark without first requiring the applicant to prove secondary meaning, the owner of the mark is entitled to the presumption that the registered trademark is inherently distinctive." Reply at 7 (citing *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999)). However, the presumption is effective only as of the date of registration, and

10

Defendants contend that the FAC does not describe when the alleged infringement occurred or when the Marks were registered. *Id.* To the contrary, Plaintiff alleges the dates of each of the five registrations (September 2017 for three Marks, September 2023 for the fourth, and January 9, 2024 for the fifth), FAC ¶¶ 11–17, and alleges that "Defendants have and are currently" infringing the Marks, *id.* ¶ 20. The Court finds the allegations support the presumption, and therefore the strength of the mark weighs in favor Plaintiff.

### E. Actual Confusion

"Under the sixth factor . . . courts look to the confusion of reasonable prudent consumers." *KJ Korea*, 66 F. Supp. 3d at 1016. The Court agrees with Defendants that Plaintiff's allegations regarding this factor are conclusory. That is, Plaintiff merely alleges that Defendants' actions are "likely to cause confusion." FAC ¶ 29. "Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001); *see also KJ Korea*, 66 F. Supp. 3d at 1016 (citing *Packman*, 267 F.3d at 643) ("The absence of factual allegations demonstrating actual confusion is not dipositive of the likelihood of confusion."). So, this factor does not weigh in favor of Plaintiff, but its absence is not dispositive.

### F. Intent to "Palm Off"

Finally, "[u]nder the seventh factor . . . courts primarily look for evidence that the defendants are attempting to 'pass off' their products as having come from the

11

plaintiff." *Id.* at 1017 (citing *Packman*, 267 F.3d at 644). Again, Plaintiff's allegations are conclusory: the FAC alleges that Defendants intend to "exploit the good will associated with RBG's trademark"; however, Plaintiff does not allege whether Defendant actually knew the mark existed or intended to make a profit by using Plaintiff's mark. FAC ¶ 20. Like the court in *Mon Aimee Chocolat*, the Court finds that "this allegation is not particularly helpful because it is a legal conclusion, as opposed to a fact," it nonetheless finds that Plaintiff's "alleged facts detailed above are sufficient to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" 2015 WL 6407758, at *6 (quoting *Twombly*, 550 U.S. at 555).

All in all, the Court finds that Plaintiff has sufficiently pled the likelihood of confusion. *See Mon Aimee Chocolat*, 2015 WL 6407758, at *6.

Defendants also raise the affirmative defense of fair use. Memo. Dismiss at 5–7. Generally, a plaintiff is not required to plead around an affirmative defense, including fair use. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). However, this principle does not rescue a plaintiff that pleads itself out of court. *Id.* The fair-use defense involves fact-intensive determinations generally inappropriate for the motion to dismiss stage. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). In the Seventh Circuit, a Rule 12(b)(6) motion to dismiss based on an affirmative defense is typically improper, and should be granted only if the court has "no doubt" that there is a valid affirmative defense. *See Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Here, the Plaintiff has not pled itself out of court and the Court declines to engage in the

fact-intensive analysis that the fair use defense requires, at the motion to dismiss stage. *See Mon Aimee Chocolat*, 2015 WL 6407758, at *7. In short, the Court denies the motion to dismiss the FAC on fair use grounds.

## II. False Advertisement (Count III)

In Count III, Plaintiff asserts a claim for false advertisement.[3] Defendants argue that since the FAC alleges fraudulent conduct, the FAC must comply with the heightened standards of Rule 9(b). Memo. Dismiss at 10. Defendants contend that Plaintiff's FAC fails to meet this standard as Plaintiff's allegations are general in nature. *Id*. Several courts have applied Rule 9(b)'s heightened pleading standard to Lanham Act claims when these claims "are sound in fraud." *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 2017 WL 6569633, at *7 (N.D. Ill. Dec. 21, 2017) (*VitalGo I*). "A claim 'sounds in fraud' if it 'is premised upon a course of fraudulent conduct.'" *Id*. at *8 (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). Further, the Seventh Circuit, albeit in dicta, has also indicated that Rule 9(b) may be applied to Lanham Act claims that are sound in fraud. *Id*. (citing *Gensler v. Strabala*, 764 F.3d 735, 736 (7th Cir. 2014) (noting that plaintiff, in bringing claims based on Section 43(a)(1)(A) of the Lanham Act, had "charged [Defendant] with a form of fraud, so we would expect its complaint to allege with particularity the nature of the

---

[3]The parties call the claim of false advertisement by three different names: false description, FAC at 7; false advertisement, Resp. at 17; and false designation of source, Memo. Dismiss at 8. These are three different claims with different elements under the Lanham act. A Plaintiff need not plead legal theories, and labels do not necessarily matter. *See, e.g., Reed v. Columbia St. Mary's Hosp.,* 915 F.3d 473, 479 (7th Cir. 2019). Based on the Court's reading of the FAC and Plaintiff's response, the Court understands Plaintiff to be alleging a claim for false advertising.

13

grievance—what [Defendant] said and why it is false")). Based on these cases, the Court agrees with Defendants and will analyze Plaintiff's false advertisement claim under the heightened pleading standard of Rule 9(b).

"To satisfy the heightened pleading standard of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where and how: the first paragraph of any newspaper story." *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 886 (N.D. Ill. 2019) (*VitalGo II*) (cleaned up). Rule 9(b) requires alleging with particularity the time, place, content, and method by which the specific person making the misrepresentation did so. *Id*.

To state a claim for false advertising, "a plaintiff must allege that: (1) the defendants made a false statement of fact about its own or another's product in a commercial advertisement; (2) the statement deceived or has the tendency to deceive a substantial portion of its audience; (3) the deception is likely to influence consumers' purchasing decisions; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result. *VitalGo II*, 370 F. Supp. 3d at 890–91 (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)).

The Court agrees with Defendants that the allegations are not pled with particularity under Rule 9(b). A plaintiff has two options for alleging the first element: (1) the plaintiff can allege that the statement is literally false or (2) the plaintiff can allege that the statement is misleading, by establishing that actual customers have been misled. *Dyson, Inc. v, Sharkninja Operating LLC*, 259 F. Supp.

14

3d 816, 828–29 (N.D. Ill. 2017) (citing *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1088–89 (7th Cir. 1994)). Literal falsity is the only issue here as Plaintiff does not allege that actual customers have been misled, only that the Defendants' use of the Marks is *likely* to cause confusion. FAC ¶ 36.

False advertising claims are often raised in cases where a defendant has made a statement regarding the quality or source of the product. *See Dyson*, 259 F. Supp. 3d at 820 (defendants ran short informercials that asserted their vacuum performed better than plaintiff's product); *BASF Corp.*, 259 F. Supp. 3d at 1089 (defendant stated that its antifreeze "meets the Ford and GM specifications); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 941 (3d Cir. 1993) (defendant ran an advertising campaign that claimed it outperformed leading motor oil against viscosity breakdown).

Here, Defendants' use of the phrase RESTAURANTWARE or RESTAURANT-WARE hardly rises to the level of an advertising campaign that makes a false statement of fact about "the nature, characteristics, qualities, or geographic origin" of any goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B). Plaintiff's FAC claims that Defendants' use "'RESTAURANTWARE' as a category of products by including a link in advertising that says: 'Browse our Restaurantware'. . ." rather than claiming that Defendants are asserting something false about their product. FAC ¶ 22. Plaintiff has not pled with particularity anything to suggest that Defendants' advertisements are materially false such that they would deceive consumers and influence their purchasing decisions.

15

Plaintiff identifies no false statement of fact made by Defendants about the nature of its product, and therefore, Plaintiff fails to sufficiently plead its false advertisement claim. The Court grants Defendants' motion to dismiss Count III.

### III.  State Law Claims (Counts IV–VI)

In Counts IV–VI, Plaintiff brings claims under common law injury for business reputation, Illinois Deceptive Trade Practices Act, and the Illinois Trademark Registration and Trademark Act. FAC ¶¶ 38–48. Under these claims, a defendant is liable only if the plaintiff can establish a likelihood of confusion between the parties' products. *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1174 (7th Cir. 1986) (citing *Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1064 (N.D. Ill. 1982)). "'Likelihood of confusion' has the same meaning in unfair competition cases under Deceptive Trade Practices Act as it has in traditional infringement cases." *Id*. Defendants argue that Plaintiff's state-law claims must be dismissed for the same reasons as discussed above with respect to Plaintiff's Lanham Act claims. Memo. Dismiss at 10. Because the Court finds that Plaintiff's trademark infringement claims survive, so too do Plaintiff's state-law claims (apart from the Illinois ICFA claims discussed above).

### IV. Standing to Bring Illinois Consumer Fraud Act Claim (Count VII)

In Count VII, Plaintiff asserts a claim for violation of the ICFA. FAC ¶ 49. Defendants seek dismissal of Count VII on the basis that Plaintiff does not allege that it is a consumer or that there is a "consumer nexus." Memo. Dismiss at 10–11.

The ICFA prohibits the "misrepresentation or the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce." 815 ILCS 505/2. Fraud claims, such as ICFA, must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b); therefore, plaintiffs must plead allegations brought under ICFA with particularity. *Glob. Total Off. Ltd. P'ship v. Glob. Allies, LLC*, 2011 WL 3205487, at *1 (N.D. Ill. Jul. 28, 2011) (citing *Freedom Mortg. Corp. v. Burnham Mortg., Inc. et al.*, 720 F. Supp. 2d 978, 1004 (N.D. Ill. 2010)).

Plaintiff does not have standing under the ICFA because "the claimant must be considered a 'consumer' under the statute." *Hickory Hills Foodmart, Inc. v. Equilon Enters., LLC.*, 2023 WL 4273664, at *4 (N.D. Ill. June 29, 2023). A "consumer" is "any person who purchases or contracts for the merchandise not for resale in the ordinary course of his trade or business but for his use . . . ." 815 ILCS 505/1(e). Status as a corporation does not preclude it from being defined as a "consumer" under the ICFA. *Lululemon USA, Inc. v. 108 N. State Retail, LLC*, 2009 WL 1732103, at *4 (N.D. Ill. June 17, 2009). However, to be a consumer, the plaintiff must allege that it contracted with the defendant for the purchase of merchandise not for resale in the ordinary course of its trade or business. *Id*. Here, Plaintiff does

17

not allege that it contracted with Defendants for any merchandise, therefore, Plaintiff is not a consumer.

A corporation can also sue under ICFA if there is a sufficient "consumer nexus." "Claims under the Act must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Travelers Indem. Co. of Am. v. Weaver Boos Consultants, Inc.*, 671 F. Supp. 2d 992, 993 (N.D. Ill. 2009) (citing *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436–37 (7th Cir. 1996)). To sufficiently plead a consumer nexus, a plaintiff must allege the defendant's conduct was of a sufficient magnitude to be likely to affect the market generally. *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004).

Here, Plaintiff does not allege that Defendant made false and misleading statements of fact to consumers related to any aspect of their business to give rise to standing, let alone allege those facts with particularity to warrant a ICFA analysis. The most Plaintiff alleges is that Defendants have exploited the Marks' good will. FAC ¶ 20. The facts Plaintiff pleads are not enough to allege that Defendants' conduct was of sufficient magnitude to be likely to affect the market generally.

## Conclusion

The Court grants in part and denies in part Defendants' motion to dismiss [27]. The Court denies the motion as to Counts I–II and IV–VI. It grants it as to Counts III and VII. SYH is directed to answer the FAC on or before October 14, 2025.

Dated: September 29, 2025

                                                  Franklin U. Valderrama
                                                  United States District Judge